UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Megan McLoughlin et al. o/b/o persons similarly situated, <br>     Plaintiffs, | : <br> : <br> : <br> : | |
| v. | : <br> : | CIVIL ACTION NO. <br> 3:08-cv-00944 (VLB) |
| People's United Bank, Inc. <br> and Bank of New York Mellon, Inc., <br>     Defendants | : <br> : <br> : | <br> <br> November 19, 2008 |

## MEMORANDUM OF DECISION DENYING PLAINTIFF'S MOTION TO REMAND
[Doc. # 11]

This case arises out of the loss of electronic data stored by Bank of New York Mellon, Inc. ("BNY Mellon") for People's United Bank, Inc. ("PUB") and others. Plaintiff Megan McLoughlin, a PUB customer whose electronically-stored personal banking data was lost by BNY Mellon, brought this putative class action on her own behalf and on behalf of persons similarly situated ("Plaintiffs") against BNY Mellon and PUB in Connecticut Superior Court alleging negligence, invasion of privacy, breach of fiduciary duty, and violations of the Connecticut Unfair Trade Practices Act (CUTPA). The defendant banks removed the action to this court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) (CAFA), whereupon Plaintiffs filed the within motion to remand. For the reasons hereinafter set forth, the motion is DENIED.

### I. Background

In their complaint originally filed in the Connecticut Superior Court for the

1

Judicial District of Fairfield, Plaintiffs claimed that PUB collected electronic data and records of its customers and contracted with BNY Mellon to store that data. BNY Mellon created backup tapes, allegedly in an unencrypted form, some of which were later lost. The putative class consists of depositors and other customers of PUB as well as other similarly situated persons whose data was handled and lost by BNY Mellon. Complaint [Doc. #1, Ex. A] at ¶ 16. Plaintiffs' alleged damages include "improperly charged account fees," "the costs of remedying the [data] breach through the purchase of identity theft protection and monitoring of accounts to ensure against identity theft," damages for "unnecessary and illegal intrusion into their privacy rights," and "mental and emotional distress" as well as punitive damages and attorney's fees. In accordance with Connecticut's Rules of Practice, Plaintiffs filed a Statement of Amount in Demand, claiming damages in excess of $15,000, the jurisdictional threshold for Superior Court jurisdiction. [Doc. #1].

On June 24, 2008, the defendant banks timely filed a Notice of Removal to federal court, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, removing the case to this Court pursuant to the CAFA based on a putative class consisting of more than 100 members, diversity of citizenship between at least one plaintiff and defendant, and an amount in controversy in excess of $5,000,000, exclusive of interest and costs. [Doc. #1].

On July 24, 2008, Plaintiffs filed a motion to remand the case to state court on the grounds that the defendant banks failed to establish that the amount in

controversy exceeded the statutory minimum in 28 U.S.C. § 1332(d).  Both parties agree that the class consists of hundreds of thousands, if not millions of people. While the Plaintiffs argue that the number of class members is not known, they claim that the class may consist of as few as 450,000 people. The defendant banks contend that the class consists of as many as 10 million people. There is no question that diversity of citizenship between one plaintiff and one defendant exists, as the named plaintiffs are claimed to be citizens of Connecticut, and BNY Mellon is a New York bank.

## II.  Discussion

Removal is proper if the federal district court has original jurisdiction over the matter, which can be established under CAFA if "the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs," there are more than 100 putative class members, and diversity of citizenship exists between at least one class member and one defendant.

The party seeking removal bears the burden of establishing removal jurisdiction.  Blockbuster v. Galeno, 472 F.3d 53, 57 (2d. Cir. 2006).  The removing party must show a "reasonable probability that the aggregate claims of the plaintiff class are in excess of $5 million." Id. at 58.  (Internal quotations omitted). Where "the complaint fails to allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy" exceeds the jurisdictional amount.  Royal Ins. Co. v. Jones, 76 F. Supp. 2d 202, 204 (D. Conn. 1999).  However, the claims made by the plaintiff, not

3

the likely recovery, control. "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of the plaintiff to recover an amount adequate to give the court jurisdiction . . . does not oust jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938).

Here, the only point of dispute is the amount in controversy. While the complaint and removal petition may not contain sufficient information to establish the amount in controversy, "[w]here the pleadings themselves are inconclusive as to the amount in controversy . . . federal courts may look outside those pleadings to other evidence in the record." United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square, Inc. 30 F.3d 298, 305 (2d Cir. 1994). Because the Connecticut Rules of Practice do not require a specific demand, but rather only a statement that the amount in controversy is sufficient to confer jurisdiction, the pleadings are inconclusive and therefore the Court may reach beyond the pleadings to determine the amount in controversy.

The defendant banks have offered the only evidence available to the Court on this issue. They have supported their memoranda in opposition to remand with several exhibits and affidavits, while Plaintiffs have neither affirmatively argued that the amount in controversy is less than the $5 million jurisdictional threshold, nor submitted any evidence to rebut the proof offered by the defendant banks.

The defendant banks submitted a press release by the Connecticut Attorney General's Office with their removal notice citing 4.5 million persons affected by BNY Mellon's data breach, of whom 403,894 were PUB customers. The defendant banks relied on this press release to establish the number of potential class members. The Court may take judicial notice of the press releases of government agencies. See In re Zyprexa Products Liability Litigation, 549 F. Supp. 2d 496, 501 (E.D.N.Y. 2008). While Plaintiffs note that only 403,894 of the persons affected were PUB customers, their class definition, as stated in their complaint, includes "other persons whose data was handled and lost by BNY Mellon who are similarly situated," not PUB customers only. On August 29, 2008, PUB supplemented their opposition to remand with a press release from the office of Connecticut Governor M. Jodi Rell stating that investigation into the BNY Mellon data breach found that the information of 556,000 PUB depositors and as many as 6 million additional persons whose data was stored by BNY Mellon had been lost. [Doc. #26]. This would put the total number of class members at more than ten million people. Plaintiffs did not respond to the supplemental evidence.

BNY Mellon also submitted evidence on the claimed damages per class member. BNY Mellon attached a Connecticut Law Tribune interview with Plaintiffs' counsel, Michael Stratton, which states, "Stratton is seeking seven years of credit monitoring, credit insurance, and other damages for his clients." [Doc. #19, Exhibit A]. The Court may take notice of a plaintiff's description of the damages demanded. See Preferred Fixture Manufacturing Co. v. Sealed Air Corp.

and Carpenter Co., 3:03-cv-01160, 2003 U.S. Dist. LEXIS 18892 (D. Conn., Oct. 23, 2003) (admitting plaintiff's demand letter to establish amount in controversy).

BNY Mellon then cites to the $14.95 cost of a month of credit monitoring by Experian, one of the three major credit reporting agencies, as indicative of the damages claimed by Plaintiffs. [Doc. #18]. PUB likewise submitted the affidavit of its Senior Vice President, Peter Scotch, who states that he is familiar with the cost of identity theft protection and that it ranges from $9 to $14.95 a month. [Doc. #25]. Plaintiffs did not respond to either calculation of the claimed damages. Therefore, at $14.95 a month, for seven years, the amount in controversy for each class member would be $1,255.80. With ten million class members, the amount in controversy overall would be over twelve billion dollars. However, even if the cost of credit reporting per person were much lower, even a nominal recovery per class member of $1 on the invasion of privacy, breach of fiduciary duty, and CUTPA claims would exceed the jurisdictional threshold.

Notably, Plaintiffs do not state that their damages are less than $5,000,000. While the defendant banks have the burden of proof on this issue, they have submitted evidence that damages exceed $5,000,000, and estimated the form that the claimed relief would take. As Plaintiffs have not taken the opportunity to "clarify [the] complaint after removal in order to assist the Court in evaluating the jurisdictional facts existing at the time of removal" the uncontroverted evidence and arguments advanced by the defendant banks are found to be credible in establishing compliance with the jurisdictional limits. Ryan v. Cerullo, 343 F.

Supp. 2d 157, 159 (D. Conn. 2004) (noting that "post-removal clarifications by way of stipulation may be particularly useful" when state court procedure does not require damages to be stated with particularity). The preponderance of the evidence thus establishes original jurisdiction in this Court.

III. Conclusion

For the foregoing reasons, Plaintiffs' motion to remand [Doc. #11] is DENIED.

IT IS SO ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: November 19, 2008.