UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MEGAN MCLOUGHLIN, et al., : | |
| o/b/o others similarly situated, : | |
|     Plaintiffs, : | CIVIL ACTION NO. |
| : | 3:08-cv-00944(VLB) |
| v. : | |
| : | |
| PEOPLE'S UNITED BANK, INC. and : | August 31, 2009 |
| BANK OF NEW YORK MELLON, INC., : | |
|     Defendants. : | |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTIONS TO DISMISS**
**[Docs. ##55, 56]**

    This case arises out of the loss of electronic banking data that was managed by The Bank of New York Mellon Corporation, Inc. ("BNY Mellon"), sued herein as Bank of New York Mellon, Incorporated. The lost electronic information included banking data about customers of People's United Bank Incorporated. ("PUB").  The named Plaintiffs consist of individuals who have or had accounts with PUB. The Plaintiffs bring this putative class action on their own behalf and on behalf of persons similarly situated: individuals with compromised banking information as a result of the Defendants' loss of personal banking data. The Plaintiffs initially brought this action in Connecticut Superior Court, alleging negligence, breach of fiduciary duty, and violations of the Connecticut Unfair Trade Practices Act (CUTPA). The defendant banks removed the action to this Court pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d) on June 24, 2008 [Doc. #1]. On January 2, 2009, the Plaintiffs filed an amended class

1

action complaint [Doc. #53], whereupon the Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, and, in the alternative for lack of standing. [Docs. ## 55, 56]. For the reasons hereinafter set forth, the Court GRANTS the Defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Facts

The following facts are alleged in the amended complaint. PUB is a large, federally-chartered, New England regional bank, and has its principal place of business in Bridgeport, Connecticut. BNY Mellon is the world's largest custodial bank and has its principal place of business in New York, New York. The named Plaintiffs are or were customers and depositors of PUB residing in Connecticut. To obtain financial services with PUB, the Plaintiffs were required to provide PUB with various items of personal financial information that included their names, addresses, and Social Security Numbers, and bank account information ("Personal Information").

PUB had a contract with BNY Mellon to handle the Plaintiff's Personal Information in electronic form. In February of 2008 a third-party company, selected by BNY Mellon, transported computer back-up tapes that contained the Plaintiffs' and putative class members' Personal Information. Despite BNY Mellon's Online Privacy Policy statement that it protects the confidentiality of Social Security Numbers through "physical, electronic, and procedural

safeguards that are designed to comply with applicable legal standards," BNY Mellon maintained the computer back-up tapes in an unencrypted format. On, or about February 27, 2008, a metal box that contained six to ten of the unencrypted back-up tapes was either lost or stolen from the truck used to courier the information. The truck had a broken lock and was left unattended during the period of transport. Approximately two months following this breach, the Defendants began to alert the customers to the loss of the unencrypted back-up tapes. BNY Mellon first offered individuals whose information had been compromised a year of credit monitoring and subsequently offered two years of credit monitoring, $25,000 in identity theft insurance, and free credit freezes. The Defendants have yet to inform some members of the Class about the loss of their Personal Information.

On May 23, 2008, the named Plaintiffs brought this putative class action in Connecticut Superior Court. On June 24, 2008, the Defendants removed the action to this Court pursuant to CAFA. On July 24, 2008, the Plaintiffs moved to remand this action. On November 12, 2008, the Defendants moved to dismiss the Plaintiffs' claims. [Docs. ##41, 42]. On November 18, 2008, the Court granted the Plaintiffs' motion to stay the case until the Court ruled on their motion to remand [Doc. #44], and on November 19, 2008, the Court denied the Plaintiffs' motion to remand. McLoughlin v. People's United Bank, Inc., 586 F.Supp.2d 70 (D. Conn., 2008). On November 20, 2009, the Defendants renewed their motions to dismiss. [Docs.##46, 47]. On January 2, 2009, the Plaintiffs filed an amended complaint.

3

[Doc. #53]. On January 20, 2009, the Defendants filed the instant motions to dismiss the plaintiffs' amended complaint. [Docs. ## 55, 56]. As the Plaintiffs have been aware of the alleged deficiencies in their pleadings since November 12, 2008, and have already amended their complaint once with knowledge of those deficiencies, the Court grants the Defendants' motion to dismiss pursuant to Rule 12(b)(6).

### Fed. R. Civ. P. 12(b)(1) Standard

The Defendants argue that the Plaintiffs lack constitutional standing to sue, and that the Court therefore lacks subject matter jurisdiction. A party may by motion challenge the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint." Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). "But, when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Id., citing Norton v. Larney, 266 U.S. 511, 515 (1925).

**Article III Standing**

While PUB asks the Court to dismiss the case for lack of subject matter jurisdiction only in the alternative to relief under 12(b)(6), this court is a court of limited subject matter jurisdiction and has a duty to consider any defect in jurisdiction in the first instance. See Correspondent Services Corp. v. First Equities Corp. of Florida, 338 F.3d 119, 123 (2d Cir. 2003). The Defendants argue that the Plaintiffs lack constitutional standing because they fail to plead any injury in fact. "The Constitution's case-or-controversy limitation on federal judicial authority, Art. III, § 2, underpins both our standing and our mootness jurisprudence . . ." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs, 528 U.S. 167, 180 (2000). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 180-81, citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

The Second Circuit reiterated that rule, stating that, "[t]o qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" Baur v. Veneman, 352 F.3d 625, 632 (2d Cir. 2003) quoting Lujan, 504 U.S. at 560. "[T]he courts of appeals have generally recognized that threatened harm in the form of an increased risk of future injury may serve as injury-in-fact for Article III

**5**

standing purposes." Id. at 633. In Baur, the Second Circuit noted a series of decisions where it found standing where plaintiffs pleaded only an increased risk of harm, and concluded "that such injuries are cognizable for standing purposes, where the plaintiff alleges exposure to potentially harmful products." Id. at 634.

Defendants would limit that holding to cases where plaintiffs allege some known and quantifiable risk of physical injury from environmental harms. However, in Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006), the Second Circuit found standing for certain members of a class of plaintiffs who received faulty tax advice. In that case, undeserved tax benefits were received and a quantifiable risk of a tax audit and attendant tax liabilities and penalties were ascertainable statistically. The plaintiffs alleged that they had paid excessive fees for the faulty advice, ran the risk of being audited, and had forgone legitimate tax benefits. The Second Circuit noted that those plaintiffs had suffered actual harm as they had "also taken costly and time-consuming steps to rectify errors in their past or future tax filings, and paid fees for the advice."

Therefore, the court concluded that although those plaintiffs had not and might not ever pay any tax penalty, they had suffered an injury-in-fact sufficient to confer constitutional standing. While recognizing that an "injury-in-fact must be 'distinct and palpable,' as opposed to 'abstract,' and the harm must be 'actual and imminent,' not 'conjectural or hypothetical,'" the Second Circuit explained that "an injury-in-fact differs from a 'legal interest'; an injury-in-fact need not be capable of sustaining a valid cause of action under applicable tort law. An injury-

in-fact may simply be the fear or anxiety of future harm." Id. (internal citations omitted).

The Plaintiffs argue that notwithstanding the absence of any actual or quantifiable risk of loss, their claims are similar to those of the Denney plaintiffs; in their opposition brief, they do not theorize their harm as the actual or increased risk of identity theft but rather the supposed excessive fees they paid to the Defendants for protection from misuse of their confidential information. The Defendants contend, however, that the Plaintiffs make no mention of any fees in their Amended Complaint.

Indeed, the Plaintiffs' closest reference to fees are statements that the "Plaintiffs and the Class entrusted their Personal Information to Defendants with the intent that Defendants would protect that information. As a result of Defendants' actions, plaintiffs lost the benefit of that bargain."[1] With regard to a "bargain," the Amended Complaint only notes that the named Plaintiffs, the only proper parties at this stage of the litigation, "have or had accounts with [PUB]." [Doc. # 53].

When deciding a 12(b)(1) motion, "the jurisdiction of a federal court must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings." Norton, 266 U.S. at 515. The Court will not draw inferences in favor of the non-moving party. The Court cannot

---

[1]As Defendants point out, the Plaintiffs cannot amend their complaint in their opposition brief, and the Plaintiffs have not filed a second amended complaint to include allegations about fees. See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998).

7

assume that the Plaintiffs paid a fee to the Defendants, much less that their decision to pay a fee was driven by expectations regarding how their data would be protected (such as decisions regarding encryption and transport services for the data). Therefore, the analysis in Denney does not apply, and the Court must consider an increasingly common scenario in this nation: one where the plaintiffs' personal information is missing, has not yet been misused, but where the plaintiffs fears that it will be used improperly and to their financial detriment.

In two notable cases, courts have found that such a fear of identity theft is a sufficient basis for standing, though not enough to sustain claims under the relevant state tort laws. In Pisciotta v. Old Nat. Bankcorp, 499 F.3d 629 (7th Cir. 2007), the circuit court, reviewing the trial court's judgment for the defendants on the pleadings, concluded that the consumers whose information was stolen from the defendant banks' website had suffered an injury-in-fact but not a compensable injury under Indiana law.

Likewise, the court in Caudle v. Towers, Perrin, Forster & Crosby, Inc., 580 F. Supp. 2d 273 (S.D.N.Y., 2008) found that an employee alleged an adequate injury-in-fact for standing purposes when a laptop containing his personal information was stolen from his employer, but could not sustain a claim under New York law for negligence or breach of fiduciary duty. Some federal courts from outside of this circuit have determined a lack of standing in cases alleging solely an increased risk of identity theft. See, e.g., Randolph v. ING Life Ins. and Annuity Co., 486 F. Supp. 2d 1 (D.D.C., 2007); Key v. DSW, Inc., 454 F. Supp. 2d

684 (S.D. Ohio 2006); Bell v. Acxiom Corp., No. 4:06CV00485, 2006 WL 2850042 (E.D. Ark. October 03, 2006); Giordano v. Wachovia Securities, LLC, No. 06-476, 2006 WL 2177036 (D.N.J. July 31, 2006). The recent trend, in "lost data cases," as exemplified by Pisciotta however, seems to be in favor of finding subject matter jurisdiction.  See, e.g., Ruiz v. Gap, Inc., 540 F. Supp. 2d 1121 (N.D.Cal.,  2009) (standing but no quantifiable damages where thief broke into data processor's office, stealing laptops containing unencrypted personal data). Consistent with this noted trend, the very cases that the Defendants rely upon have recently been called into question during one of the case's appeal.  See Randolph v. ING Life Ins. and Annuity Co., 973 A.2d 702, 706-707 (D.C., 2009) (citing Doe v. Chao, 540 U.S. 614, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004) in order to "question the approach that these courts have taken in DSW, Bell, and Giordano]," and indicating that the test for standing, as proscribed by  Doe, was "fairly easily satisfied" by the case's fact pattern). Moreover, the Second Circuit standard for an injury in fact as consisting of as little as "simply . . . the fear or anxiety of future harm" seems to be more permissive than the standards applied in those like cases where courts have found no standing. See Denney, 443 F.3d at 264. Therefore, having established subject matter jurisdiction, the Court must determine whether the Plaintiffs have stated a claim upon which relief may be granted.

**Fed. R. Civ. P. 12(b)(6)**

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party. . . In general, [the court's] review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court must determine whether the plaintiff has pleaded sufficient facts, as opposed to legal conclusions, to have "nudged [the] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U. S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009).

The Defendants argue that all three of the Plaintiffs' claims must be dismissed because each claim requires, as an element, that the plaintiff have suffered some actual damage.

**Choice of Law**

The claims pleaded against the Defendants consist of state common law (in the case of the negligence and breach of fiduciary duty claims) and statutory

claims (in the case of the CUTPA claim). As the Amended Complaint identifies that the relevant conduct occurred in both New York and Connecticut, and that the parties are domiciled in both states, the Court ordered the parties to brief the choice of law for this matter in order to ascertain what relief, if any, was available. [Doc. # 67]. The Defendants argue that because there is no conflict of laws, in relation to the negligence and breach of fiduciary duty claims, and the Amended Complaint fails to state a claim under any relevant state's law, the Court need not conclusively determine choice of law. BNY Mellon further argues that CUTPA does not apply to the conduct alleged in the complaint because CUTPA would only apply if Connecticut was the state with the "most significant relationship" to the matter.

Federal courts adjudicating cases where subject matter jurisdiction is founded on diversity of citizenship apply the choice of law principles of the forum state. Gilbert v. Seton Hall University, 332 F.3d 105, 109 (2d Cir. 2003). Therefore, the Court applies Connecticut choice of law rules. "The threshold choice of law issue in Connecticut, as it is elsewhere, is whether there is an outcome determinative conflict between applicable laws of the states with a potential interest in the case. If not, there is no need to perform a choice of law analysis, and the law common to the jurisdiction should be applied." Lumbermens Mutual Cas. Co. v. Dillon Company, Inc., 9 Fed. Appx 81, 83 (2d Cir. 2001), citing Haymond v. Statewide Grievance Comm., 723 A.2d 821, 826 (Conn. Super. Ct.

1997), aff'd, 247 Conn. 436, 723 A.2d 808 (1998) ("Under modern conflicts-of-law theory, where there is a 'false conflict' such that the laws of both states relevant to the set of facts are the same, or would produce the same decision in the lawsuit, there is no real conflict between them. In such a case, the case ought to be decided under the law that is common to both states. It is only after a determination is made that there is indeed an actual conflict between the laws of the particular jurisdictions that the interests of the respective jurisdictions are analyzed.")

The parties all agree that the laws of the states relevant to this proceeding are the same with regard to the negligence and breach of duty claims, and that a "false conflict" exists.  The CUTPA claim however, can only apply if Connecticut law is determined to govern the conduct that supports that particular allegation. See Travel Services Network Inc. v. Presidential Financial Corp. Of Massachusetts, 959 F. Supp. 135 (D. Conn, 1997) (citing Bailey Employment System Inc. V. Hahn, 655 F.2d 473, 475-476 (2d Cir.1981). Although Connecticut courts have traditionally determined choice-of-law by focusing on the place of injury pursuant to the doctrine of lex loci delicti, viz, courts now apply the "most significant relationship test." O'Connor v. O'Connor, 201 Conn. 632, 637 (1986); U.S. Fidelity & Guaranty Co. v. S.B. Phillips Co., Inc., 359 F. Supp. 2d 189, 206 (D. Conn. 2005). Central to this analysis is: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties,

and (4) the place where the relationship, if any, between the parties is centered." See Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc., 406 F. Supp. 2d 175, 200 (D.Conn. 2005) (also noting that "[w]hile the plain language of CUTPA is directed at unfair competition taking place in this state, courts have held that CUTPA does not require that a violation actually occur in Connecticut, if the violation is tied to a form of trade or commerce intimately associated with Connecticut, or if, where Connecticut choice of law principles are applicable, those principals dictate application of Connecticut law.") (internal citations and quotations omitted).

Under the facts of this case, the place where the injury and the conduct causing injury occurred is unclear and minimally probative. The Plaintiffs' CUTPA claim identifies not just the act of "losing" the data but efforts to secure the Connecticut customers as conduct that caused the injury. As a result, argument can be made that the place of the injury and conduct causing the injury implicates, at least in part, interactions with the customers within the state of Connecticut. The third and fourth factors appear more relevant. In this case, the Plaintiffs and the putative class members are Connecticut residents, PUB is headquartered in Connecticut, and BNY Mellon is based in New York. More importantly, the relationship between these parties is centered in Connecticut. PUB is the centerpiece to the parties' relationship. PUB is headquartered in Connecticut and secured the Plaintiffs' information in Connecticut. In turn, BNY

Mellon received the information only by virtue of its relationship with PUB. In applying all the factors and weighing them in accordance with their relevance, the Court finds that Connecticut law applies.

## CUTPA

Assuming, as the Plaintiffs contend, but not deciding that CUTPA applies to the conduct alleged, the Court must consider whether the Plaintiffs have plausibly alleged an ascertainable loss sufficient to sustain their CUTPA claim. "In order to state a cause of action under the CUTPA, a plaintiff must demonstrate that she has suffer[ed] any ascertainable loss of money or property, real or personal . . ." <u>Maguire v. Citicorp Retail Services, Inc.</u>, 147 F.3d 232, 238 (2d Cir. 1998). Plaintiffs argue that they have alleged ascertainable loss in the form of "lost banking fees." As previously noted, the Amended Complaint does not mention any fees, lost or otherwise. Therefore they may not support their CUTPA claim with excessive fees not alleged in the complaint.

The Plaintiffs also argue that their "increased risk of identity theft" represents an ascertainable loss. While the courts of Connecticut have yet to address whether the risk of identity theft represents an ascertainable loss under CUTPA, a Maine federal court, in considering a claim under Maine's Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, et seq., which similar to CUTPA includes ascertainable loss as an element, determined that the theft of personal data did not represent an ascertainable loss, noting: "[o]n this issue, the cases that the parties cite are almost uniform in not allowing recovery where there is only a risk

of injury and no actual misuse of the stolen electronic data." In re Hannaford Bros. Co. Customer Data Security Breach Litigation, 631 F.Supp.2d 108, 131, n. 128 (D.Me., May 12, 2009) (collecting cases).

The Court must also consider the public policy underlying CUTPA. The public policy behind CUTPA is to allow litigants to act as "private attorneys general" in vindicating important social rights. Gill v. Petrazzuoli Bros., Inc., 10 Conn.App. 22, 33, 521 A.2d 212 (1987). However, in this case, the actual Attorney General of Connecticut has already taken action against the Defendants on behalf of the proposed class, and secured a settlement providing for three years of credit monitoring, full indemnification for any funds that might be stolen from their accounts, and a payment of $150,000 into the general fund of Connecticut.[2] Considerations of comity solidifies the conclusion that the Plaintiff's CUTPA claim fails at this stage.

### Negligence

If the Court were to apply the law of New York to this case, the negligence and fiduciary duty counts would be easily dismissed as on all fours with Caudle,

---

[2] Press Release, Connecticut Attorney General's Office, Attorney General Announces Bank Of New York Mellon Lost Personal Information Of 135,000 More CT Residents (Sept. 2, 2008) *available at* http://www.ct.gov/AG/cwp/view.asp?A=2795&Q=422188; Press Release, Connecticut Department of Banking, Department of Consumer Protection and Department of Banking Announce Settlement with Bank of New York Mellon for 2008 Data Breach (Feb. 3, 2009) *available at* http://www.ct.gov/dob/cwp/view.asp?a=2245&q=433242. The Court may take judicial notice of the press releases of government agencies. McLoughlin, 586 F.Supp.2d at 73.

580 F. Supp. 2d at 282. In Caudle, the Court granted summary judgment, dismissing claims for negligence and breach of fiduciary duty brought by plaintiffs whose information was contained on a stolen laptop, but whose identities had not been stolen, holding, "New York would likely require proof of a 'rational basis' for the fear that the [stolen] data would be misused." Id. Here, the plaintiffs have even less cause to worry than the Caudle plaintiffs. Though it was not known in Caudle whether the thief had stolen the laptop for the purpose of accessing the personal data within, the data was, allegedly, in the hands of a thief. Likewise, in Pisciotta, 499 F.3d at 640, hackers had allegedly stolen data for the use of the data itself, but the court declined to find a remedy for a claim sounding in negligence. Here, there is no allegation as to the fate of the missing box of tapes. They could have been inadvertently discarded or destroyed, or they could be collecting dust in some forgotten warehouse. It is only through speculation that one concludes that they are in possession of an individual who is driven to maliciously mine the tapes for the personal data that they contain. Accordingly, this is not a "risk of injury" case but rather a speculation as to a possible risk of injury.

In a case involving a lost (but not stolen) laptop, a court applying New York law dismissed claims for negligence and breach of fiduciary duty, holding, "an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy. Plaintiff's alleged injuries are solely the result of a perceived and speculative risk of future injury that may never occur." Shafran v. Harley

Davidson, Inc., 07CV01365, 2008 WL 763177 at *3 (S.D.N.Y. Mar. 20, 2008). The Court must now determine whether Connecticut courts would afford a different outcome.

Although Connecticut courts have not dealt with this precise issue, the Connecticut Supreme Court has held that "conduct that is merely negligent, without proof of an actual injury, is not considered to be a significant interference with the public interest such that there is any right to complain of it, or to be free from it." Right v. Breen, 277 Conn. 364, 890 A.2d 1287, 1294 (Conn. 2006). Therefore actual damages are a necessary element of any claim sounding in negligence. Id. While no Connecticut Court has ever held that an increased risk of identity theft is insufficient to establish actual damages, the Plaintiffs have pointed to no case decided anywhere in the country where a court allowed a negligence claim to survive absent an allegation of actual identity theft. See Pisciotta, 499 F.3d at 639 (collecting authorities). The Court concludes that the courts of Connecticut, like those of New York, would not recognize a negligence claim founded solely on the fear, unsupported by any allegation of malfeasance, of identity theft, particularly by a person insured against such loss.

**Breach of Fiduciary Duty**

Under Connecticut and New York law, actual harm is an essential element of the tort of breach of fiduciary duty. See M.P.H. Recovery, LLC v. Bank of America, CV054010772S, 2007 Conn. Super. LEXIS 457 at *20 (Conn. Super. Jan. 30, 2007) ("to sustain a breach of fiduciary claim the plaintiff would need to show that it sustained harm, and the plaintiff has failed to do so."); see also Caudle,

580 F. Supp. 2d at 282 (New York law). In their brief on their breach of fiduciary duty claim, Plaintiffs theorize their harm in the same way as in their deficient negligence claim: increased fees, which are not mentioned in the complaint. Under the pleading standards of Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009), the Court cannot determine whether it is plausible that the Plaintiffs paid fees to the Defendants to keep their information safe where the plaintiffs do not even plead that they paid fees. The Defendants pointed out in their reply briefs, filed February 25, 2009, that the plaintiffs have failed to plead any facts to support this "fee-disgorgement" theory. [Docs. ## 61, 62] The Plaintiffs have not moved to amend their complaint in the six months that have passed. The fiduciary duty claim is deficient without any allegation of actual damages.

Potential Application of New Jersey Law

As a final matter, the briefs on the issue of choice of law, submitted by the parties' in compliance with the Court's order [Doc. #67] identify New Jersey as the location where the Protected Information was lost. Facts relating to New Jersey's relation to this matter were not included in the Plaintiff's Amended Complaint, but are included in a press release issued by the Connecticut Department of Banking[3] that is cited by Defendant BNY Mellon. [Doc. #68]. Even with judicial notice of these additional facts, the Court would still identify Connecticut as the state with the most significant relationship for the reasons previously stated, and still find that only a false conflict existed between the laws of the relevant states. See Giordano v. Wachovia Securities, LLC, No. 06-476,

---

[3] **Press Release, Connecticut Department of Banking, Department of Consumer Protection and Department of Banking Announce Settlement with Bank of New York Mellon for 2008 Data Breach (Feb. 3, 2009)** *available at* http://www.ct.gov/dob/cwp/view.asp?a=2245&q=433242. **The Court may take judicial notice of the press releases of government agencies. McLoughlin, 586 F.Supp.2d at 73.**

2006 WL 2177036 (D.N.J. July 31, 2006) (noting that the cited injuries in the plaintiff's negligence claim for the loss of financial and personal data "at best, are speculative and hypothetical future injuries"); DiMisa v. Acquaviva, 400 N.J. Super. 307, 315 (2008) (quoting the Restatement (Second) of Torts to note that "'[o]ne standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation.'")

Therefore, the Court concludes that the Amended Complaint fails to state any claim upon which relief may be granted.

The Defendants' motions to dismiss [Docs. ##55, 56] are GRANTED. The Clerk is directed to CLOSE this case

          IT IS SO ORDERED.

          _____/s/_____

          Hon. Vanessa L. Bryant
          United States District Judge

**Dated at Hartford, Connecticut:**    August 31, 2009